U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JAN 2 3 2015

CLERK, U.S. DISTRICT COURT
By _____

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

JAMES DOHERTY,                    §
                                  §
          Plaintiff,              §
                                  §
VS.                               §   NO. 5:14-CV-155-A
                                  §
DUANE NELLIS, ET AL.,             §
                                  §
          Defendants.             §

MEMORANDUM OPINION
and
ORDER

Before the court for consideration and decision is the
motion of defendants, Duane Nellis, Tedd Mitchell, Simon
Williams, Ronald Seacrist, and Kevin Williams, to dismiss the
first amended complaint of plaintiff, James Doherty, for failure
to state a claim upon which relief may be granted.  After having
considered such motion, plaintiff's response, plaintiff's first
amended complaint ("Complaint"), which includes the supporting
exhibits, and pertinent legal authorities, the court has
concluded that such motion should be granted.

I.

History

This action was initiated on August 12, 2014, by a petition
filed by plaintiff in the District Court of Lubbock County,
Texas, 72nd Judicial District, in which he named as defendants
Texas Tech University, Texas Tech University Health Sciences

Center, and Texas Tech Police Department.  A few days later plaintiff filed his first amended pleading in state court, naming as defendants those he had named in his original state court pleading.  Plaintiff filed a second amended pleading in state court on August 22, 2014, that added as a defendant Ronald Seacrist, in his official capacity as Chief of Police of Texas Tech Police Department.

The originally named defendants filed a plea to the jurisdiction in state court based on sovereign immunity, which was granted by an order issued by the state court on August 26, 2014, dismissing all claims against those defendants with prejudice.

On August 29, 2014, plaintiff filed his third amended pleading in state court, that time naming as defendants the same persons who are named as defendants in this action as it now exists, except in the third amended state court pleading they were all sued only in their official capacities.  On September 10, 2014, the newly named defendants, in their official capacities, removed the action to this court, causing the removal to be made to this court's Lubbock Division.

The judge of this court assigned to the Lubbock Division recused on September 12, 2014, causing the action to be transferred to another judge of this court, who, in turn, recused

2

on September 17, 2014, causing the action to be transferred to yet another judge of this court, who transferred the action to the docket of the undersigned on September 24, 2014.  Because the undersigned has not found a good reason to recuse or transfer it to another judge, the undersigned has kept the action, which continues to be an action pending in the Lubbock Division.

Following a telephone conference between the undersigned and counsel conducted on September 26, 2014, the court issued an order on that date requiring plaintiff to file by October 3, 2014, an amended pleading that complied with Rule 8(a) of the Federal Rules of Civil Procedure, as interpreted by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  On October 3, 2014, plaintiff filed an amended pleading that was not in proper form, which the court unfiled, giving plaintiff a new deadline of October 15, 2014, to file an amended complaint that complied with this court's requirements.

On October 15, 2014, plaintiff filed a document titled "Plaintiff's First Amended Complaint and Demand for Jury Trial," which is the current pleading of plaintiff to which defendants' motion to dismiss is directed.  A part of the Complaint was a seventy-nine page exhibit volume, which recited on its cover page that:  "Plaintiff, JAMES DOHERTY, files this Volume of Exhibits

as incorporated by reference in Plaintiff's First Amended Complaint."

The defendants named in the Complaint are Duane Nellis ("Nellis"), who is alleged to be the President of Texas Tech University, a public university of the State of Texas; Tedd Mitchell ("Mitchell"), who is alleged to be President of Texas Tech University Health Sciences Center; Simon Williams ("S. Williams"), who is alleged to be Associate Dean for Academic Affairs for the Texas Tech University Health Sciences Center School of Medicine; Ronald Seacrist ("Seacrist"), who is alleged to be Chief of the Texas Tech Police Department; and Kevin Williams ("K. Williams"), who is alleged to be Associate General Counsel of the Texas Tech University System (hereinafter collectively "defendants").  Defendants are all sued in their official and individual capacities.

II.

The Nature of Plaintiff's Pleaded Claims

Plaintiff summed up in the Complaint the legal bases of his pleaded claims as follows:

> 9.   This action is brought by Plaintiff pursuant to 42 U.S.C. § 1983 and § 1988 to redress violations by Defendants of Plaintiff's rights secured by the Due Process Clause of the Fourteenth Amendment as well as Due Process rights under the Texas Constitution Article I, Sections 17 and 19. . . .

4

> 10.   Additionally, Plaintiff brings this action
> pursuant to Americans with Disabilities Act, Title II,
> 42 U.S.C. Section 12131 et Seq. The Rehabilitation Act
> of 1973, 29 U.S.C. Section 794 ("Section 504["]) as
> hereinafter more fully appears and Chapter 121 of the
> Human Resources Code, Tex. Hum. Res. Code Ann. Section
> 121 (1999) ("Chapter 121") and Section 1983 as secured
> by the Equal Protection Clause of the Fourteenth
> Amendment to the U.S. Constitution to correct
> discriminatory actions on behalf of the defendants
> against plaintiff because of regarded disabilities.

Compl. at 2-3, ¶¶ 9-10.[1]

The following is a summary of potentially pertinent factual allegations of the Complaint:

Plaintiff was a student at the Texas Tech University Health Sciences Center School of Medicine ("Medical School"). He had completed the first year of Medical School, was promoted to the second year, and was beginning his second year when the actions about which he complains were taken. The Complaint, through its exhibits, provides relevant background information bearing on those actions.

The incident that directly precipitated the actions about which plaintiff complains occurred on June 29, 2014. A staff member of the Student Recreational Center reported that on that date he was the victim of a physical assault by plaintiff. That report was not the first Medical School officials had received of

---

[1]The descriptions plaintiff gives of his claims in the body of the Complaint do not precisely align with his summary descriptions quoted above.

what others had perceived to be inappropriate conduct of plaintiff.  Those reports, and responsive activity of Medical School officials, included the following:

(1)  In November 2012, S. Williams received a series of reports from students in the first year Medical School class "of an individual who had been attending school functions and classes and had been making female members of the class very uncomfortable by staring at them and making inappropriate comments."  Compl., Ex. Vol. at 52.  After S. Williams learned that the individual in question was plaintiff, who had been accepted for study in the Medical School, he arranged for Dr. Kim Peek, the Assistant Dean for Admissions and Diversity, to meet with plaintiff.  Id.  At the meeting, which occurred in November 2012, plaintiff was informed of the complaints about his behavior, and instructed to cease attending class functions and to stop behaviors that were distressing to members of the opposite sex.  Id.

(2)  In September 2013, female students in the first year Medical School class requested to meet with Dr. Lauren Cobb, the Assistant Dean for Student Affairs, to discuss concerns they had about plaintiff's conduct.  Id. at 52-53.  At the meeting, each of the students provided a written statement expressing her

concern for her safety in the presence of plaintiff based on episodes she described in her statement.  Id. at 52-53, 56-66.

(3)  Over the next two days, S. Williams received unsolicited emails from two more students in the first year Medical School class expressing concerns about plaintiff's behavior.  Id. at 53, 67-68.

(4)  Based on the student complaints, S. Williams arranged for a meeting with plaintiff.  Id. at 53.  He explained to plaintiff that he had received several complaints about plaintiff's behavior, and he gave plaintiff a letter explaining that plaintiff's behavior was considered to be inappropriate. Id. at 53, 69-70.  The letter concluded with the following statements:

> Please understand that the School of Medicine takes these complaints very seriously as they refer to behaviors that can negatively affect the learning environment for students in the school.  Please be aware that further reports of inappropriate behavior on your part will be addressed through the processes described in the Code of Professional and Academic Conduct.

Id. at 70.  During the meeting plaintiff refused to enter into a dialogue with S. Williams about his behavior.  Id. at 53.

(5)  S. Williams had a second meeting with plaintiff on September 27, 2013, after plaintiff had had an opportunity to reflect on the content of the September 24 letter he was given at

the first meeting.  Id. at 53.  "[Plaintiff] again refused to
enter into any dialogue about his behavior, choosing again to
challenge technicalities in the procedure."  Id.

(6)   There were meetings at that time with the Texas Tech
Police to discuss the possibility of issuing a Criminal Trespass
Warning directed to plaintiff, but the determination was made
that the complaints received thus far did not rise to the level
of such a warning.  Id.  S. Williams "decided that the only
avenue to proceed would be to issue a Complaint of Misconduct,
but the female students indicated that they did not wish to be
part of a Conduct Board Hearing."  Id.

(7)   In May 2014, S. Williams was informed by Margaret Duran
("Duran"), the Assistant Vice President for Student Services,
Registrar & Financial Aid at Texas Tech University, that a Texas
Tech University student had filed a report about inappropriate
behavior by plaintiff.  Id.  The student expressed significant
concern about her safety.  Id.  Instead of proceeding with a
formal complaint, the student moved her residence to avoid
interactions with plaintiff, who was her neighbor at the time of
the reported events.  Id.

The next event of consequence that came to the attention of
S. Williams was a report he received from Duran that plaintiff
had been involved in a physical altercation with a personal

trainer at the Texas Tech University Recreational Center.   Id.
This was the precipitating event that occurred on June 29, 2014.

The information S. Williams received about plaintiff's
alleged assault on the personal trainer led to a series of
meetings to consider the appropriate response by the Medical
School.  Id. at 54.  Rather than to proceed directly with a
Complaint of Misconduct, S. Williams informed plaintiff that he
should meet with him to discuss the Rec Center incident so that
plaintiff would have an opportunity to present his side of the
story.  Id.  The meeting was scheduled for 11:00 a.m. on July 28,
2014.  Id.  At approximately 10:00 a.m. on July 28, S. Williams
was informed that someone was at his office inquiring about where
to set up for a legal deposition.  Id.  Plaintiff appeared at
approximately 10:55 a.m. and asked S. Williams to confirm that a
videographer and a stenographer could not attend the meeting, to
which S. Williams responded affirmatively.  Id.  Plaintiff then
handed S. Williams a document, and said that that was his only
response to S. Williams's request for a meeting.  Id. at 54, 20-
24.  When S. Williams asked plaintiff if he would not meet with
him, plaintiff did not reply.  Id. at 54.  Following that, S.
Williams prepared and delivered a Complaint of Misconduct to

Ronald L. Cook ("Cook"), an Associate Professor at the Medical School.[2] Id. at 28-29, 54.

On July 30, 2014, Cook informed plaintiff by letter that the Medical School had initiated an investigation into allegations that plaintiff had violated the Student Handbook Code of Professional Conduct based on the facts related in the Complaint of Misconduct filed by S. Williams. Id. at 25-26. Plaintiff was informed that the recommended remedy for the complaint was dismissal from the Medical School. Id. at 25. Cook advised plaintiff that Cook was plaintiff's contact for all matters concerning the investigation proceedings, and informed plaintiff that plaintiff was required to meet with Cook within five business days from the date of the letter and that plaintiff had the responsibility to call Cook's office for an appointment. Id. at 25-26. Cook's letter was accompanied by a Complaint of Misconduct signed by S. Williams in which the following supporting facts were stated:

> On July 1, 2014 Margaret Duran, TTUHSC Assistant
> Vice President for Student Services, Registrar &
> Financial Aid, informed the School of Medicine of a
> report of alleged misconduct by Mr. Doherty. Mr.
> Doherty was the subject of a report submitted to the
> TTU Police Department concerning an alleged assault of
> a personal trainer named Nicholas Hanley at the TTU

---

[2] Presumably this is the Complaint of Misconduct that appears at pages 28-29 of the exhibits to the Complaint.

Recreational Center.  This incident occurred on
June 29, 2014.  The report indicated that Mr. Doherty
attacked Mr. Hanley after Mr. Hanley had approached Mr.
Doherty to attempt to arrange a personal training
session.  In the description of the incident, Mr.
Hanley indicated that Mr. Doherty jumped on his back
and placed him in a rear choke hold.  Mr. Hanley stated
that he assumed Mr. Doherty was playing until he felt
Mr. Doherty's grip growing tighter around his neck.
Mr. Handley [sic] indicated that after repeated
attempts to tell Mr. Doherty to stop, he finally did
so.  The incident was witnessed by multiple people at
the Recreational Center and was also recorded on the
surveillance video system at the center.  This
recording will be made available for this
investigation.

Mr. Doherty has been the subject of previous
reports about his inappropriate behavior from several
students over the past 24 months or so.  Although these
prior reports did not result in official complaints of
misconduct, Mr. Doherty has been counseled about the
need to ensure that he did not behave inappropriately
in the future.  Therefore the incident described above
is not an isolated incident but represents the
culmination of several independent incidents of
misconduct.

Mr. Doherty has refused a request to discuss this
incident with representatives of the School of
Medicine.

Id. at 28-29.  The complaint made reference to the specific

provisions of the Student Code that plaintiff had violated, and

concluded with the statement that the remedy being sought was

"Dismissal without Readmission."  Id. at 29.

Also attached to Cook's letter were a report of the Texas

Tech Police Department pertaining to the June 29, 2014 incident,

accompanied by a narrative description of the incident.  Id. at 32-33.

On August 4, 2014, a complaint of Criminal Trespass Warning was issued to plaintiff.[3]  Id. at 10, 54.  Although he was subject to the Criminal Trespass Warning, plaintiff was able to access lectures online, as regularly half of the current student population does, and arrangements were made for him to take his tests on campus.  Id. at 39, 43, 45, 47, 54.  If plaintiff had wished to challenge the Criminal Trespass Warning, the Medical School had a grievance process available to him, which afforded plaintiff "both a hearing before a committee[] and avenues to appeal should he not agree with the committee's decision."  Id. at 54.

Plaintiff, in the company of his attorney, went to a meeting with Cook.  Id. at 40.  Plaintiff delivered to Cook a letter in response to the Complaint of Misconduct that, rather than to provide factual response, again asserted what plaintiff considered to be his procedural and substantive due process rights.  Id. at 37-38.

On August 6, 2014, the attorney for plaintiff sent an email to Cook posing a number of questions to Cook.  Id. at 40.

_____

[3]The Criminal Trespass Warning appears at page 10 of the exhibit volume to plaintiff's Complaint.

12

K. Williams became involved when he responded by email to plaintiff's attorney that he was concerned that the attorney was communicating directly with Cook when the attorney knew that K. Williams, as Associate General Counsel for Texas Tech University Health Sciences Center, was representing Cook. Id. at 42.

The Student Conduct Board of the Medical School met on September 15, 2014, for the purpose of making a decision on the Complaint of Misconduct of S. Williams, about which plaintiff was informed by Cook's July 30, 2014 letter. Id. at 76-78. Written evidence was submitted prior to the hearing, including plaintiff's evidence, presented through his attorney. Id. at 77. Plaintiff chose not to attend the hearing. Id. Instead, his attorney submitted a letter, apparently during the meeting, outlining objections to the hearing. Id. The Board presumed that plaintiff denied the allegations in the Complaint of Misconduct. Id.

On September 24, 2014, the Chairman of the Student Conduct Board issued findings and a recommended sanction. Id. at 77-78. The five-member committee voted unanimously in favor of a recommendation that plaintiff be dismissed from the Medical School without the option of re-application. Id. at 78.

Plaintiff perfected an appeal from that recommendation to the Executive Vice President and Provost of the Medical School,

who, on September 30, 2014, issued a letter informing plaintiff that after having reviewed the findings and recommendation of the Student Conduct Board as well as a digital recording of the hearing of the Student Conduct Board and supporting documents submitted by the parties for the Student Conduct Board Hearing, he concurred with the unanimous recommendation of the Student Conduct Board for plaintiff's immediate dismissal without option for re-application to the Medical School. Id. at 79. Plaintiff was told by that letter that he was thereby dismissed from the Medical School effective immediately. Id.

Thereafter, plaintiff appealed the decision of the Executive Vice President and Provost of the Medical School; and, at the time of the filing of the Complaint, he was awaiting the decision. Compl. at 17, ¶ 71.

### III.

### Grounds of the Motion to Dismiss

Defendants mentioned in their motion the narrow grounds contemplated by Supreme Court law for judicial review of disciplinary action taken by a public school, noting that the Supreme Court has stated that the United States Constitution does not protect a public education as a substantive fundamental right. Also integral to defendants' motion was defendants' reliance on the principle that to establish a violation of

14

substantive due process, a plaintiff would have to prove certain facts that are not supported by the Complaint.  As to plaintiff's claim that he was denied procedural due process, defendants noted that procedural due process rights in a case such as this are satisfied if the student is given notice of the charges and evidence against him and an opportunity to present his side of the story.  According to defendants, the Complaint affirmatively establishes that plaintiff's substantive due process rights were not violated and that he received all procedural due process to which he was entitled.

Defendants maintained in their motion that plaintiff's "takings claim is patently frivolous," Mot. at 6, and that the Complaint fails to state any facts that would satisfy the basic pleading requirements of a "taking" claim.  Plaintiff's failure, according to defendants, to articulate any viable claim against any defendant precludes pursuit by plaintiff of his conspiracy claim against the defendants.  According to defendants, plaintiff's complaint concerning the Criminal Trespass Warning is contrary to law, as articulated by circuit courts, on that subject.

Plaintiff's Americans With Disabilities Act ("ADA") claims were attacked in the motion on the grounds that the Complaint is devoid of

> aspects of a cogent theory of liability under the ADA, which would either be (1) Defendants' alleged failure to engage in the interactive process under the ADA precluded the Plaintiff from receiving an appropriate accommodation for his disability, which led to his exclusion from campus and dismissal from school or (2) Defendants retaliated against Plaintiff due to their misperception of his alleged disability, when in fact Plaintiff was able to fully perform the requirements of a student at [the Medical School].

Id. at 9.  Defendants added that "Plaintiff has not identified any actual disability that could have been accommodated, nor does he explain why the ADA requires [the Medical School] to have tolerated his behavior."  Id.  Finally, as to the ADA claim, defendants asserted that "Plaintiff has not alleged a violation of Title II of the ADA which represents a violation of the 14th Amendment and, as such, has not stated a claim for which relief may be granted as the state enjoys sovereign immunity to Plaintiff's ADA claim."  Id. at 10.

IV.

## Analysis

A.  Pertinent Standards Applicable to Rule 12(b)(6) Motions

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading.

16

It requires that a complaint contain "a short and plain statement
of the claim showing that the pleader is entitled to relief,"
Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair
notice of what the claim is and the grounds upon which it rests,"
Twombly, 550 U.S. at 555 (internal quotation marks and ellipsis
omitted).  Although a complaint need not contain detailed factual
allegations, the "showing" contemplated by Rule 8 requires the
plaintiff to do more than simply allege legal conclusions or
recite the elements of a cause of action.  Twombly, 550 U.S. at
555 & n.3.  Thus, while a court must accept all of the factual
allegations in the complaint as true, it need not credit bare
legal conclusions that are unsupported by any factual
underpinnings.  See Iqbal, 556 U.S. at 669 ("While legal
conclusions can provide the framework of a complaint, they must
be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to
state a claim under Rule 12(b)(6), the facts pleaded must allow
the court to infer that the plaintiff's right to relief is
plausible.  Id.  To allege a plausible right to relief, the facts
pleaded must suggest liability; allegations that are merely
consistent with unlawful conduct are insufficient.  Twombly, 550
U.S. at 566-69.  "Determining whether a complaint states a
plausible claim for relief . . . [is] a context-specific task

17

that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In a case such as this, where the plaintiff has submitted exhibits to his Complaint, they are part of the Complaint for all purposes. See Fed. R. Civ. P. 10(c) (stating that "an exhibit to a pleading is part of the pleading for all purposes"). See also United States ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 375 (5th Cir. 2004)(holding that "it is not error to consider the exhibits to be part of the complaint for purposes of a Rule 12(b)(6) motion"). In the instant action, plaintiff expressly incorporated his exhibits by reference into the Complaint, thus making clear that he expected the court to treat the contents of the exhibits the same as if they were allegations in the Complaint.

B.   **Plaintiff's Complaint, When Considered Together With Its Exhibits, Fails to State Any Claim Against Any Defendant Upon Which Relief May Be Granted**

Plaintiff's Complaint would fail to state a claim upon which relief may be granted against any of the defendants even if the exhibits were not considered to be part of the Complaint. When the exhibits are considered, the court is provided information from which the court can conclude that plaintiff has affirmatively pleaded facts establishing that plaintiff cannot

18

state a claim against any defendant upon which relief may be granted.

1.   <u>The Due Process Claims</u>

    a.   <u>Supreme Court and Fifth Circuit Authority</u>
           <u>Pertinent to the Due Process Claims</u>

In <u>San Antonio Independent School District v. Rodriguez</u>, the Supreme Court said that "Education, of course, is not among the rights afforded explicit protection under our Federal Constitution.  Nor do we find any basis for saying it is implicitly so protected."  411 U.S. 1, 35 (1973).  In <u>Plyler v. Doe</u>, the Supreme Court interpreted its <u>Rodriguez</u> statement to mean that "[p]ublic education is not a 'right' granted to individuals by the Constitution."  457 U.S. 202, 221 (1982).

However, if a state establishes and maintains a public school system "and has required its children to attend," the "State is constrained to recognize a student's legitimate entitlement to a public education as a property interest, which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."  <u>Goss v. Lopez</u>, 419 U.S. 565, 574 (1975).  The process that "students facing suspension and the consequent interference with a protected property interest must be given [are] <u>some</u> kind of notice and . . . <u>some</u> kind of

19

hearing." <u>Id.</u> at 579.  No formal hearing is required so long as the student is given an opportunity to explain his version of the facts after being told what he is accused of doing and what the basis of the accusation is.  <u>Id.</u> at 582.  "Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school," <u>id.</u> at 582, but "[i]n such cases the necessary notice and rudimentary hearing should follow as soon as practicable," <u>id.</u> at 582-83.

In <u>Regents of University of Michigan v. Ewing</u>, the Supreme Court assumed, <u>arguendo</u>, "the existence of a constitutionally protectible property right in [a student's] continued enrollment" in a public university.  474 U.S. 214, 223 (1985).  Based on that assumption, the Court said that the "assumed property interest gave rise to a substantive right under the Due Process Clause to continued enrollment free from <u>arbitrary</u> state action . . . ."  <u>Id.</u> (emphasis added).  The Supreme Court went on to say that "[t]he question, then, is whether the record compels the conclusion that 'the University acted arbitrarily'" in taking the disciplinary action it took against the student.  <u>Id.</u> at 225.

"The touchstone of Due Process is protection of the individual against arbitrary action of government." <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 845 (1998)(internal brackets,

quotation marks, & citation omitted). "[T]he Due Process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." <u>Id.</u> at 848. "[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." <u>Id.</u> at 849.

Fifth Circuit decisions have been consistent with the principles announced by the Supreme Court. In <u>Wheeler v. Miller</u>, the Fifth Circuit assumed, as the Supreme Court had done, that a student has a property or liberty interest in the continuation of his education subject to procedural Due Process protection. 168 F.3d 241, 247 (5th Cir. 1999)(per curiam). In <u>Wheeler</u>, the Fifth Circuit noted that in <u>Ewing</u> the Supreme Court recognized that, in addition to procedural Due Process rights, a dismissed student, at least in an academic setting, has "a narrow avenue for judicial review under the substantive Due Process standard," <u>id.</u> at 249 (internal quotation marks & footnote reference omitted), explaining that:

> When judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as

to demonstrate that the person or committee responsible did not actually exercise professional judgment.

Courts must accept, as consistent with due process, an academic decision that is not beyond the pale of reasoned academic decision-making when viewed against the background of the student's entire career at the University. . . .

id. at 250 (internal quotation marks, brackets, & footnote references omitted).[4]

In Swindle v. Livingston Parish School Board, the Fifth Circuit interpreted the Supreme Court's Goss decision to be a holding that "a student has a property interest in continued receipt of an education when the state creates a public school system and requires children to attend," 655 F.3d 386, 393 (5th Cir. 2011). And, the Court recognized the standard of notice and hearing established by the Supreme Court in Goss that a student "facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." Id. at 397 (internal quotation marks omitted). The Court made clear that the process due to a student before the student can be deprived of his right to an education is an opportunity to tell the student's side of the

_____

[4]In Wheeler, the Fifth Circuit recognized, as had the Supreme Court, the distinction between "disciplinary" and "academic" decisions leading to a student's dismissal from an educational institution. 168 F.3d at 250. However, that distinction does not appear to be a significant one when the principles mentioned in the text are applied to the pleaded facts in the instant action.

story, explaining that while a school official is free to suspend a student after hearing the student's story, the official is required to allow the student to present his story, and if the official fails to do so, he would violate the student's Due Process rights. Id. at 401-02. However, the Swindle opinion indicates that such a Due Process right existed in that case only because a Louisiana statute directed school boards to provide public education generally and to provide suspended or expelled students alternative education, unless a specific statutory exception applied. Id. at 402.

Similar principles were applied by the Fifth Circuit in Brewer by Dreyfus v. Austin Independent School District, 779 F.2d 260, 262-63 (5th Cir. 1985). In Mitchell v. Board of Trustees of Oxford Municipal Separate School District, the Fifth Circuit, after noting that it "has consistently stated that school disciplinary matters are best resolved in the local community and within the school system," 625 F.2d 660, 664 (5th Cir. 1980), recognized that in making the decision to expel a student from a school, the school officials are "under an obligation to provide a safe environment for the children so that they can learn," id. at 664-65.

b.   The Complaint Does Not Contain Any Plausible Claim
of a Substantive or Procedural Due Process
Violation Under the Federal or State Constitutions

The contents of the Complaint establish affirmatively that if plaintiff has substantive and procedural due process rights related to the matters about which he complains, those rights were recognized and honored by all of the officials who were involved in the decision-making.  The facts disclosed by the Complaint show that the officials involved were careful to see that plaintiff had notice of complaints against him and had the opportunity to tell his side of the story.  There is no suggestion in the facts set forth in the Complaint that anyone involved in the taking of the actions about which plaintiff complains was acting arbitrarily or capriciously.

Instead, the facts set forth in the Complaint affirmatively establish that everyone involved in the proceedings acted reasonably, in good faith, cautiously, carefully, and with proper regard for the rights and interests of plaintiff, while at the same time giving appropriate consideration to the safety of complaining students and the provision of a safe environment for the students enrolled in the Medical School.

Plaintiff suggests no authority that would provide support for his claim of denial of due process rights under the Texas

24

Constitution, and the court is unaware of any.  The reasons why
the Complaint fails to state any claim for violation of
plaintiff's due process rights under the Federal Constitution
would appear to apply as well to any claim plaintiff might have
that his due process rights under the Texas Constitution were
violated.

Therefore, the motion of defendants is to be granted as to
all of the due process claims asserted by plaintiff.

2. The Unlawful Taking and Related Criminal Trespass
   Warning Claims

The court agrees with defendants that plaintiff's unlawful
taking claim is "patently frivolous."  Mot. at 6.  There is no
suggestion in any of the facts alleged in the Complaint of the
existence of the elements of a constitutional taking, as those
elements are set forth in the cases of State v. Hale, 146 S.W.2d
731, 736 (Tex. 1941) and City of Abilene v. Smithwick, 721 S.W.2d
949, 951 (Tex. App.--Eastland 1986, writ ref'd N.R.E.).
Plaintiff alleged no facts suggesting that any property of his
was taken for public use.  Moreover, plaintiff by his enrollment
in the Medical School subjected himself to the Medical School's
policies and procedures pursuant to which his entry onto the
premises of Texas Tech University or the Medical School could be
restricted.  The Criminal Trespass Warning about which plaintiff

complains was no more than that.  The court adds that the restriction placed on plaintiff's access to the campus facilities did not prevent him from pursuing his educational opportunities during the pendency of the disciplinary proceedings against him.

There is no reasonable basis for an argument that the facts alleged would support a cause of action that the Criminal Trespass Warning was unconstitutionally vague or overbroad as applied to plaintiff.  Plaintiff has cited no authority that supports his alleged conclusion that he has such a claim.

Therefore, defendants' motion as to the unlawful taking claim and the claim that the Criminal Trespass Warning was unconstitutionally vague and overbroad is being granted.

3.   The Claims of Violations of the Americans With Disabilities Act and the Rehabilitation Act

Plaintiff seems to rest his case that defendants violated the ADA on his conclusory allegation that defendants "regarded" him as disabled.  Compl. at 25, ¶ 110.  He failed to allege that in fact he had a disability within the meaning of the ADA. Moreover, plaintiff alleged no facts that would support a conclusion that the ADA required defendants or the Medical School

to tolerate plaintiff's inappropriate behavior.  Put simply,
plaintiff has alleged no facts that would make plausible any ADA
claim against any of the defendants or any claim against any of
the defendants under Section 504 of the Rehabilitation Act of
1973.

    4.   <u>The Conspiracy Claim</u>

    Plaintiff's conspiracy claim fails for the reason, at least,
that plaintiff has not alleged any facts descriptive of any
wrongful conduct against any defendant that could lead to
conspiracy liability.  Put another way, plaintiff has not alleged
any facts that would support a conclusion that he was denied any
rights by any of the defendants, with the consequence that even
if they engaged in a cooperative effort to accomplish the things
about which plaintiff complains, there would be no conspiracy
liability.

    While defendants do not discuss in their motion the
"Intracorporate Conspiracy Doctrine," the court is inclined to
think that it would be another reason why plaintiff could not
successfully assert conspiracy claims against defendants, all of
whom, according to the allegations of the complaint, were acting
at all times as officials of Texas Tech University or its related
Medical School or Police Department.  The court has no reason to

think that the Fifth Circuit would not give full effect to that Doctrine in an action such as the instant one.  Indeed, the Fifth Circuit has been given credit for creation of the Doctrine.  See Buschi v. Kirven, 775 F.2d 1240, 1251 (4th Cir. 1985).

In Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir. 1998), the Fifth Circuit indicated that the Doctrine would prevent pursuit of a conspiracy claim under 42 U.S.C. § 1985.  A similar result was reached by the Fifth Circuit in Hilliard v. Ferguson, 30 F.3d 649, 653 (5th Cir. 1994), where the Court said that "[w]e follow the reasoning of the other courts . . . and hold that a school board and its employees constitute a single legal entity which is incapable of conspiring with itself for the purposes of § 1985(3)."  Also of interest is Hankins v. Dallas Independent School District, 698 F. Supp. 1323, 1330 (N.D. Tex. 1988), holding that "a school and its officials constitute a single legal entity which cannot conspire with itself" (cited with approval in Hilliard, 30 F.3d at 653 n.17).

The Doctrine has been applied to overcome conspiracy claims in 42 U.S.C. § 1983 cases.  See, e.g., Toussie v. County of Suffolk, 806 F. Supp. 2d 558, 586-87 (E.D.N.Y. 2011); Veney v. Ojeda, 321 F. Supp. 2d 733, 748 (E.D.V.A. 2004).

There is no suggestion in any facts alleged in the Complaint that any of the defendants was not acting within the scope of his employment in doing the things described in the Complaint.  Thus, the Intracorporate Conspiracy Doctrine would appear to be a further impediment to any pursuit by plaintiff of a conspiracy claim against any of the defendants.

  5.   Whatever Remains

Because of the scattergun approach taken by plaintiff in his Complaint, there may be uncertainty as to the exact nature of all claims the plaintiff might purport to be asserting.  The court is satisfied that if there are any that the court has not specifically discussed in this memorandum opinion, no facts are alleged that would support any such claim.  To the contrary, the information provided in the Complaint is sufficient for the court to conclude that none of the conduct of defendants or their employers about which plaintiff complains could provide the basis for any legal claim against any of the defendants, either individually or in his official capacity.

C.   Conclusion

For the reasons given above, the court has concluded that plaintiff has failed to state a claim against any defendant, either in the defendant's individual capacity or his official

29

capacity, upon which relief may be granted.   The appearance is
that this is purely a "spite" suit brought by plaintiff with the
goal of showing the people at Texas Tech that plaintiff is not
someone to be "messed with."   If it is anything more than that,
plaintiff failed to disclose in the Complaint what it is.   In any
event, now is the time to bring this highly questionable
litigation to an end.

V.

<u>Order</u>

The court ORDERS that defendants' motion to dismiss be, and
is hereby, granted as to all claims asserted by plaintiff; and

The court further ORDERS that all claims and causes of
action plaintiff purports to assert in the above-captioned action
be, and are hereby, dismissed with prejudice.

SIGNED January 23, 2015.

_____
JOHN McBRYDE
United States District Judge